UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDREW JOHN MCCORMACK,

        Plaintiff,                  Case No. 1:23-cv-36

v.                                      Honorable Phillip J. Green

THE COUNTY OF CALHOUN INC.
FORM, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated as a pretrial detainee at the Calhoun County Correctional Center (CCCC) in Battle Creek, Michigan. The events of which he complains occurred there. Plaintiff sues Calhoun County,[2] Sheriff Steven Hinkley, and Chief Deputy David Tendziegloski.

Public records indicate that Plaintiff has been charged with first-degree home invasion and assault with a dangerous weapon. *See* https://micourt.courts.michigan.gov/case-search/court/C37 (type "McCormack" for Last Name or Business, type "Andrew" for First Name, then select "Search") (last visited Jan. 23, 2023). Plaintiff is represented by counsel in his criminal case, and criminal proceedings remain pending in the Calhoun County Circuit Court.

In his complaint, Plaintiff contends that Defendants have discriminated against him by rejecting his numerous requests to use the law library that is available for Immigration and Customs Enforcement (ICE) detainees to use. (ECF No. 1, PageID.4.) Plaintiff has attached the relevant portion of the CCCC handbook to his complaint to provide further detail. That relevant portion states:

> A law library covering Immigration Law is available for those detainees held on Immigration charges (ICE). We do <u>NOT</u> provide a law library covering general U.S. or State of Michigan Law. If additional assistance or materials are required, assistance will be provided upon request. This includes: printing materials, additional mailing assistance, etc. The ICE

---

[2] Plaintiff lists this Defendant as "The County of Calhoun Inc. Form." (ECF No. 1, PageID.2.) The Court has liberally construed Plaintiff's complaint to name Calhoun County as a Defendant, rather than the nonexistent entity named by Plaintiff, which would not be amenable to suit.

> National Detainee Handbook is maintained electronically on this system and available for your use. Three mobile computer libraries are available for use by ICE detainees on request for 14 hours per day; other hours may be made available with the approval of the shift Lieutenant.

(ECF No. 1-1, PageID.12.) Plaintiff asked to use the law library to "prepare for trial" but was told that CCCC does not have a law library "for local inmates." (ECF No. 1-2, PageID.13–14.)

Based on the foregoing, the Court construes Plaintiff's complaint to assert First Amendment access to the courts claims and Fourteenth Amendment equal protection claims. Plaintiff seeks injunctive relief as well as damages. (ECF No. 1, PageID.7.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Access to the Courts Claims

The Court has construed Plaintiff's complaint to assert First Amendment access to the courts claims premised upon his inability to access a law library to prepare for his criminal trial.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal

6

knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action

7

must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff contends that he is entitled to access a law library to pursue his defense in his criminal prosecution. Plaintiff, however, is not entitled to a law library or resources to defend against his present criminal prosecution. The state satisfies its obligation to provide a criminal defendant access to the courts by providing appointed counsel in a criminal proceeding. Where a criminal defendant chooses to reject appointed counsel, it is likely to impair meaningful access to the courts; however, that is simply one of the rights he gives up when he knowingly and intelligently waives his right to counsel. *See United States v. Smith*, 907 F.2d 42, 44–45 (6th Cir. 1990) ("We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library."); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) ("[T]he state does not have to provide access to a law library to defendants in criminal trials who wish to represent

themselves[.]"); *McBee v. Campbell Cnty. Det. Ctr.*, No. 17-5481, 2018 WL 2046303, at *3 (6th Cir. Mar. 15, 2018) ("A pretrial detainee voluntarily proceeding in a criminal case pro se is not constitutionally entitled to access to a law library."). The Supreme Court has acknowledged a circuit split on this issue, *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005); nevertheless, the Sixth Circuit's position is clear and binds this Court. As noted above, Plaintiff was represented by counsel during his criminal proceedings, which satisfied the State's obligation to provide him access to the courts. Therefore, Plaintiff has failed to state a claim for denial of access to the courts by virtue of Defendants' failure to give him law library time or resources to work on his criminal defense. Plaintiff's First Amendment access to the courts claims against Defendants will, therefore, be dismissed.[3]

### B. Fourteenth Amendment Equal Protection Claims

The Court has also construed Plaintiff's complaint to assert that Defendants violated his Fourteenth Amendment rights under the Equal Protection Clause premised upon the fact that CCCC provides an immigration law library to ICE detainees but does not provide a general law library for non-ICE detainees' use.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The threshold element of an equal protection claim is disparate treatment.

---

[3] To the extent Plaintiff suggests he is entitled to access a law library to pursue civil rights claims pursuant to 42 U.S.C. § 1983, he has not alleged any lost remedy. Indeed, he is pursuing a remedy for alleged constitutional violations in this lawsuit— he has successfully accessed the courts to raise his claims; therefore, he has not "lost" anything by Defendants' failure to provide him access to a library or other resources.

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to make this threshold showing. Plaintiff is not an ICE detainee; instead, he is a pretrial detainee facing criminal charges in Calhoun County.

Moreover, Plaintiff has not sufficiently alleged that he is being treated differently from ICE detainees with respect to the law library access he wants. Plaintiff indicates that he wants access to a law library to prepare for trial and, therefore, presumably wants access to state case law, statutes, etc., to help him do so. CCCC's policy, however, explicitly states that CCCC does not "provide a law library covering general U.S. or State of Michigan Law." (ECF No. 1-1, PageID.12.) The only

10

legal resources provided are those covering immigration law for ICE detainees. (*Id.*) The materials that Plaintiff presumably wants access to are unavailable to all those who are incarcerated at CCCC, regardless of their detention status. Plaintiff has failed to demonstrate that Defendants have engaged in disparate treatment and, therefore, his Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: January 31, 2023 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge